In this case, the first thing that went wrong, at least my argument is, at the trial, before the bankruptcy court, the bankruptcy court didn't give me an opportunity to present my case. It was basically before the bankruptcy court on what essentially was a motion for summary judgment. The court was determining whether there were sufficient facts to support the argument. I cited relation back cases in my brief before the court. The other side, in its reply, said that the relation back issue is irrelevant. So I arrived at the courthouse, there's no issue about relation back, I didn't focus on that. It wasn't before the court. The court raised it on its own and then decided the case based on it, I think. Because the decision of the court is partly based on the law and partly based on the facts. As far as, I would submit that the issue of whether It's primarily a legal issue in this case, wouldn't you agree? Very well. I mean, so what facts were you going to put on that you didn't get a chance to put on? Well, the determination of the superior court judge that what was the source of the equitable lien was You have the state court judgment and you have the law. There's really not much else you base your argument on, is there? Well, the comments from the superior court from the bench as to why he was issuing the judgment he was doing. Right. I mean, you weren't going to put on live testimony. You weren't prevented from putting on live testimony. No, I didn't even get a chance to call the attention of the court to what the judge had said. She just Did you make a motion for reconsideration? Yes, I did, Your Honor. And the response was? The response was no. Well, she said she considered the affidavit. She put it in her own handwriting. Well, that's true, Your Honor, but I mean, it was an unusual order. She has it written out longhand. She considered the affidavit. I don't know what she considered in the affidavit. Well, why does it make a difference now? Aren't we just presented with a straight-up legal issue? It doesn't. It doesn't. You're not arguing a due process problem. Well, I think it's sort of like a motion for summary judgment. And in a motion for summary judgment, the court under Rule 56 should not just issue a grant motion for summary judgment based sua spate or on an issue that wasn't raised by either of the parties. And that's what happened in this case. Right. But what we're talking about here is the straight-up legal issue on undisputed facts, essentially, right? Well, assuming that, Your Honor. No, I'm just asking. I mean, it looks to me as though the facts are, at least we assume the facts that you've presented, a straight-up application of law. I don't know if the court presumes that the facts are that the activity of 1997, which preceded the purchase of the Oxnard property, provided Mr. Keyes with a source of money and freed up money from Lot 2 for him to buy the Oxnard property. That's what I believe the facts are. I'm not sure exactly. Well, you know, assuming that, there's nothing in the superior court judgment that indicates that the equitable lien relates back. Is that true? It is, Your Honor. It definitely is. So then you have to rely on highs, which I don't think quite get you there, in terms of relation back. And I'm just telling you what my reaction is so you can respond to it. It would seem to be an odd rule to adopt to say that every time you loan somebody money, there's an equitable lien on property. I mean, the property statutes are pretty specific. The only reason that this comes into play is a judicial lien, and it seems to me when you look at the terms of the judicial lien, and I don't see any relation back language. So help me out. Your Honor, that's why the court ordered it. There was a transcript saying that, and I never got to put it before the court. It did relate back. It was the source of the equitable lien. That's what the superior court. Even then, Your Honor, the court, the bankruptcy court, could have conducted its own hearing on this to understand the facts fully and decide whether it related back. Instead, we got into this conversation, this argument back and forth about a Liz Pendens, which was a complete red herring, the only reason that the court brought up the Liz Pendens for relation back purposes. But the Liz Pendens, the only reason the Liz Pendens was important was that it related back before the filing of the petition, and there was no pre-petition judgment in the case that she was discussing. So there's sort of two relations back. My position was, Your Honor, that doesn't apply. The Liz Pendens is merely a placeholder for a judgment that's obtained later, and if that judgment is obtained post-petition, then it takes whatever priority is established by the Liz Pendens. There was no Liz Pendens here. There was a pre-petition judgment, which, of course, is stronger than a Liz Pendens. So there's no doubt there was a pre-petition judgment, and their rights were established before the petition was filed. I would submit that the case that the real – if I had the opportunity to put before the court what it is that Judge O'Neill – decided the case on, then it would establish relation back. I told – I informed the court, the bankruptcy court of that, in my motion for reconsideration, and the court refused. And so the primary issue, relation back, this simply wasn't an issue before the court at that time. The other side said relation back is not an issue. If the other side had said relation back was an issue, I could have come into the bankruptcy court and made sure I had every word highlighted from the superior court talking about that issue and also talking about highs and et cetera. I'm not sure why highs wouldn't apply, Your Honor. I mean, I think the law, California law, is clear that there is a relation back for an equitable lien. Now, the issue of whether there is an equitable lien or not an equitable lien, I believe, is a red herring. There's – and I think Farnsworth is the case that matters. There's comments in a lot of these cases from the BAP or from the bankruptcy court that the rule is in the Ninth Circuit that an equitable lien is a judicial lien and a judicial lien can be avoided. But there is no case that says that. There is no case in which this court makes a distinction between an equitable lien and a judicial lien and decides, well, we're going to put the label judicial lien on this and, therefore, it's going to be avoided. There is no case. The cases that are even cited for that principle in Farnsworth. So why isn't that lien that's imposed by judgment of the court not a judicial lien? It is a – I – Your Honor, it doesn't matter whether it's a judicial lien. If it attached at the same time Mr. Keyes bought the property, it doesn't – you can call it an equitable lien, you can call it a judicial lien. Judge Farnsworth called it an equitable lien but said, alternatively, it's an unjust enrichment situation. We also have an unjust enrichment situation here. The son ripped off the mother for hundreds of thousands of dollars. So – Precisely what happens if we agree with you? What do you want us to do and what happens? Well, I would request either that the court take a look at what the superior court said about the reason that he was ordering the lien in the materials. I paid 476 of the judicial notice materials which I submitted to the court. When do we have the authority to deconstruct a judgment of another court? A lien is – I mean, it's a decree but it's also a judgment. We have to give full faith and credit to judgments of state courts. Are we entitled to go in and deconstruct and say, well, you know, this is what happened along the way so we broaden or if it's not there on the face of the – I mean, I'm not sure what would happen if it were on the face, whether we'd allow a relation back anyway. But it's not on the face of it and I don't know where we get the authority to. Well, if the court doesn't have authority to do that, and that's not my plan A. My plan A is simply to ask the court to send this back to the bankruptcy court to conduct a hearing on this relation back issue. Well, the bankruptcy court is not in any better position than we are. We have a lien from the state court that says what it says. But, Your Honor, the bankruptcy is in a better position because it can conduct a trial. But that would be a collateral attack on the judgment, wouldn't it? No, Your Honor. I mean, basically, you know, if it's not in the judgment, I don't know how you can look behind it in a state court, even if the judge intended to have it relayed back. Even if it were? The judge intended to have it relayed back. And there's, of course, an open question, I suppose, even if it's there whether we would in bankruptcy. I mean, the whole idea, I mean, a large part of bankruptcy is that it doesn't recognize these in code or equitable liens once it's filed, I mean, if they're not recorded. And the whole point of having a judicial lien or other liens recorded is to get people notice and priority. So we have a lot of unfortunate situations in bankruptcy. Well, conceding that this is a judicial lien, this court has set aside judicial liens based on Laurie v. Sanderfoot. I was talking to the portion that relates back, not the lien itself. I mean, to when you've got to have it relayed back, you concede that. Yes. It sounds to me like your real problem was in the superior court, and I guess you're foreclosed from going back there to try to get some clarification. Well, Your Honor, okay. The issue of the relation back was not before the superior court. There was no reason to litigate that issue. We wanted an equitable lien. We got an equitable lien. There was no reason to establish the priority of that equitable lien vis-à-vis anybody because there was a first mortgagee, there was Mr. Keys, and there was this equitable lien. But now there is a reason. But now there is a reason, but it's after the fact, and it's imposed by the bankruptcy law. And if it's not an issue that was litigated before the trial court, I don't know that this court does have to accept it, and I think it's not decided. It's not decided. Court is time. Thank you. Thank you. Thank you. You must have missed the keys. No. My name is Roy Hargett. I'm Michael Key's father, stepfather, and I'm involved in this suit. And my son couldn't come today. Keep your voice up, please. Pardon? Talk loudly. Do I talk in this mic or this one? Just talk. Oh, I'm sorry. My name is Roy Hargett. I'm Michael Key's stepfather. You know, I've been with him since he was four, and me and him live together, and I'm involved in this suit. Why don't you settle this? Pardon? Why don't you settle this? Why don't you settle this? You can't settle it when they won't settle. She got the house. Okay. I don't need to hear it. I know you don't want to hear all that. No, no, I mean you've answered my question. There's no value in the house. The house was Michael Key's. He got a reconveyance loan. It was like a hardship loan, and they appraised the house a year ago for $300,000, and it's worth less today. It goes down in value all the time. There's no money there. There's nothing. He owes $424,000, and it's worth less than three. So there's no money anywhere. Michael Key's is broke. I think we understand. Thank you very much. Thank you. Case just argued. We'll stand submitted. We'll next hear argument of the last case on the calendar, United States v. Cotoun. Thank you.
judges: Kozinski, Trott, Thomas